**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:26-cv-23481**

MARLINE MONESTIME,

Plaintiff,

v.

CITY OF NORTH MIAMI BEACH,
DARVIN WILLIAMS, ALGO LAW FIRM, LLP,
IGNACIO ALVAREZ, FRANKLIN ROIG, and
NORBERTO HERNANDEZ a/k/a
ROBERT HERNANDEZ,

Defendants.
_______________________________________/

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT [DE 32]**

Defendants[1], pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss the Amended Complaint [DE 32], filed on August 25, 2026, by Marline Monestime ("Plaintiff"), and in support, state as follows:

## INTRODUCTION

This Court should dismiss the Amended Complaint [DE 32] for the same reasons, amongst others, that the City of North Miami Beach ("City") and Darvin Williams ("Williams") identified in moving to dismiss the original Complaint — reasons Plaintiff was told about, in writing, and could not cure. On July 2, 2026, The City and Williams moved to dismiss the original Complaint and explained, among other things, that no procedural due process claim is complete under *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc), because Florida provides adequate post-deprivation remedies that Plaintiff never pursued; that Plaintiff identified no municipal

---

[1] Defendants City of North Miami Beach and Darvin Williams move to dismiss on the grounds stated in Sections B.1 through B.6 of the Argument. Defendants ALGO Law Firm, LLP, Ignacio Alvarez, Franklin Roig, and Norberto Hernandez move to dismiss on the grounds stated in Sections B.7 through B.11. Each Defendant also joins the other Defendants' arguments to the extent that those arguments show the absence of an underlying constitutional violation or tort, or the insufficiency of the conspiracy allegations in Counts V and IX. No Defendant adopts the factual characterizations or legal arguments that another Defendant advances on his/its own behalf.

policy, custom, or final-policymaker action sufficient for liability under *Monell*; that any official-capacity claim against Williams duplicates the claim against the City; that Williams is entitled to qualified immunity; and that the Fifth Amendment does not reach these Defendants. *See* [DE 14] at 1–2. Rather than cure those defects, Plaintiff filed a thirty-seven-page Amended Complaint that doubles down on the flagged issues. Indeed, Plaintiff repleaded the same two § 1983 due process counts, adding mirror-image "liberty interest" counts resting on the same theory, and layering on conspiracy claims that fail for independent reasons. The central defect has not been cured. Plaintiff still does not allege that she pursued certiorari, mandamus, or any other Florida state-court remedy, or that Florida's remedies are inadequate.

The Amended Complaint adds four new defendants along with new claims for relief (defamation, tortious interference and another conspiracy claim). Plaintiff's new counts fare no better. The liberty-interest claims fail under the same adequate-state-process bar. The § 1983 and Florida conspiracy claims fail because there is no constitutional violation, Williams is entitled to immunity under section 768.28(9)(a), Florida Statutes, and the allegations about an agreement are conclusory. Likewise, the claims against the four new defendants (Algo Law Firm, LLP, Ignacio Alvarez, Franklin Roig, and Norberto Hernandez – together, the "Algo Defendants") are all subject to dismissal based on Plaintiff's inability to plead a valid claim.

The allegations against the Algo Defendants are long on speculation and innuendo and short on facts. At bottom, the Amended Complaint does nothing more than accuse the Algo Defendants of carrying out their engagement with the City. The investigation, the preparation of the report and the discussions between the Algo Defendants and their client (whether viewed separately or collectively) establish nothing more than the routine delivery of professional services. And without more – Plaintiff's claim against the Algo Defendants cannot stand. To begin, the Algo Defendants have the benefit of qualified immunity and a qualified privilege (on the state law counts). Second, Plaintiff is unable to demonstrate the existence of actual or express malice (as she must) in order to maintain her claims. Finally, as counsel to the City, the Algo Defendants are legally incapable of "conspiring" with the entity that retained them. The Amended Complaint represents Plaintiff's second bite at the apple. The time for dismissal has come.

## FACTUAL BACKGROUND[2]

### A. The Parties

Plaintiff, Marline Monestime, is the former Chief of Staff and Interim Assistant City Manager for the City. [DE 32] ¶ 3.

Defendant, Darvin Williams is the City Manager, whom the City Commission voted to appoint on January 20, 2026. [DE 32] ¶ 10.

Defendant, ALGO Law Firm, LLP, is a private law firm. [DE 32] ¶ 15.

Defendant, Ignacio Alvarez is an attorney and the founder/managing partner of ALGO. [DE 32] ¶ 17.

Defendant, Franklin Roig is an authorized agent of ALGO. [DE 32] ¶ 18.

Defendant, Norberto Hernandez is an authorized agent of ALGO. [DE 32] ¶ 19.

### B. Plaintiff's Employment History

Plaintiff joined the City in June 2022 as a Community Redevelopment Agency Specialist. [DE 32] ¶ 25. In October 2022, Plaintiff became an Economic Development Specialist. [DE 32] ¶ 25. From August 2023 to February 2026, she worked as Chief of Staff for the Mayor of the City and contemporaneously held the role as Interim Assistant City Manager from June 2025 to February 2026. [DE 32] ¶ 26.

### C. The Relevant Civil Service Rules

Rule 2.11 of the Civil Service Rules provides that "[t]he Classified Service of the City comprises all positions not specifically excluded by the Charter in accordance with these Rules." [DE 32] ¶ 29; City of North Miami Beach Civil Service Rules & Regulations R. 2.11 (rev. Dec. 19, 2017) ("Civil Service Rules"). [3] By virtue of her tenure with the City, Ms. Monestime was a

---

[2] The facts recited in this Motion are based strictly on the allegations of Plaintiff's Amended Complaint [DE 32], which are factually inaccurate. By reciting those allegations here, Defendants do not agree to their accuracy and do not waive the right to deny them in any subsequent pleading. Where noted, the Factual Background also relies on public records of the City of which the Court may take judicial notice.

[3] Although when generally considering a motion to dismiss, the district court must limit its consideration to the complaint and any exhibits attached to it, there are two exceptions: (1) the incorporation by reference doctrine; and (2) judicial notice. *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023). "Under the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) 'the plaintiff refers to certain documents in the complaint,' (2) those documents are 'central to the plaintiff's claim,' and (3) the documents' contents are undisputed."

"Regular Employee" in "Classified Service" under the City's Civil Service Rules. [DE 32] ¶ 31. Rule 14.1 provides that, when a position is abolished or the number of employees must otherwise be reduced, employees in the Classified Service are laid off in order: temporary employees, then probationary employees, then regular employees. Civil Service Rules R. 14.1. Rule 14.2 directs that "[t]he order of lay-off shall be established by the City Manager based on an employee's work history, performance evaluations, discipline history, education, training, experience, and the needs of the City. Layoff lists by classification by department shall be established. Employees will be given two weeks' notice of any layoff. Pay equivalent to two weeks may be given in lieu of notice." Civil Service Rules R. 14.2. Rule 14.5 of the Civil Service Rules provides that "The Board does not have jurisdiction over any issue related to layoff including, but not limited to, the decision of the City to layoff employees, the order of layoffs, or recall. Accordingly, an employee may not file an appeal to the Board on any matter relating to layoff." [DE 32] ¶ 34; Civil Service Rules R. 14.5.

**D. Plaintiff's Separation**

On January 20, 2026, the City Commission voted to engage an independent third-party to conduct a limited, fact-focused review of governance and Charter-related concerns regarding staff interactions and to submit a written report to the Commission. [DE 32] ¶ 37. Acting on the Commission's authorization and direction, Interim City Manager Andrew Plotkin signed the City's engagement agreement with ALGO on February 2, 2026. *Id.* ¶¶ 38–40, 43. Williams's

---

*Id.* (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)). Here, the requirements of the incorporation by reference doctrine are easily satisfied. First, Plaintiff referenced the Civil Service Rules in her Amended Complaint several times. [DE 32] ¶¶ 27–36. Second, the Civil Service Rules are central to Plaintiff's claim because she alleges the City and Williams failed to abide by the Rules, which resulted in a deprivation of a protected property interest in continued employment. [DE 32] ¶¶ 101, 103, 104, 121, 125. Third, the Civil Service Rules are undisputed because Plaintiff herself relies on them in alleging her constitutional violations. Because the requirements of the incorporation by reference doctrine are met, the district court should properly consider the City's Civil Service Rules when ruling on this Motion. Additionally, the Court should take judicial notice of the City's Civil Service Rules. "Courts commonly judicially notice facts contained in public documents because they are 'sources whose accuracy cannot reasonably be questioned.'" *True v. AbbVie, Inc.*, 806 F. Supp. 3d 1361, 1367 (N.D. Ga. 2025) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)); *see Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider."). Defendants will file a certified copy of the Civil Service Rules with their separate request for judicial notice.

appointment as City Manager took effect the next day, February 3, 2026.[4] N. Miami Beach, Fla., Resolution R2026-13 § 2 (Feb. 2, 2026).

On February 6, 2026, Plaintiff and Williams agreed that she would be appointed the City's Housing and Economic Development Director. [DE 32] ¶ 83. On February 10, 2026, two (2) ALGO investigators interviewed Plaintiff as part of the investigation into the treatment of City staff by elected officials. *Id.* ¶¶ 40(a), 61. ALGO issued its Interim Investigative Report on February 16, 2026. *Id.* ¶¶ 53–54.

On February 17, 2026, the City Commission adopted Resolution No. R2026-31. *Id.* ¶ *96; N. Miami Beach, Fla., Resolution R2026-31 (Feb. 17, 2026).* The resolution referred the Interim Investigative Report and related records to the Office of the Miami-Dade State Attorney and the Florida Commission on Ethics, and it states that the referral "is not a finding of criminal or ethical violation." Id. § 1.

On February 27, 2026, Williams informed Plaintiff that he had eliminated the Chief of Staff position, that the decision was non-disciplinary, and that it was effective immediately. [DE 32] ¶ 88. Plaintiff's separation letter described the decision as an organizational decision and offered her two (2) weeks of pay, together with her accrued paid time off and sick time. *Id.* ¶ 89(a). Rule 14.2 of the Civil Service Rules permits the City to provide pay equivalent to two (2) weeks in lieu of notice of a layoff. Civil Service Rules R. 14.2.

## MEMORANDUM OF LAW

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S.

[4] Resolution No. R2026-13 appointed Williams as City Manager effective February 3, 2026. Resolution No. R2026-31 is referenced in the Amended Complaint, and Plaintiff relies on it for her municipal liability theory. [DE 32] ¶¶ 96, 132. Both resolutions are public records of the City. The Court may consider Resolution No. R2026-31 under the incorporation-by-reference doctrine, *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298–99 (11th Cir. 2024); *Baker*, 67 F.4th at 1276, and may take judicial notice of both resolutions, Fed. R. Evid. 201(b)(2), (c)(2); *Bryant*, 187 F.3d at 1278; *Universal Express*, 177 F. App'x at 53. Defendants offer the resolutions only for their existence, dates, and operative terms, and not for the truth of any recital or of any other matter they discuss. Defendants will file certified copies of both resolutions with their separate request for judicial notice.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *see also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("A facially plausible claim must allege facts that are more than merely possible.").

"In evaluating whether a complaint should be dismissed under Rule 12(b)(6) for failure to state a claim, '[a] court is generally limited to reviewing what is within the four corners of the complaint.'" *Hayes v. U.S. Bank Nat'l Ass'n*, 648 F. App'x 883, 887 (11th Cir. 2016) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)); *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023) ("Generally, when considering a motion to dismiss, the district court must limit its consideration to the pleadings and any exhibits attached to it."). Although a court must, in evaluating a motion to dismiss made pursuant to Rule 12(b)(6), take the allegations in a complaint as true, "it is not permitted to read into the complaint facts that are not there." *White v. Fla. Highway Patrol, Div. of Fla. Dep't of Highway Safety & Motor Vehicles*, 928 F. Supp. 1153, 1156 (M.D. Fla. 1996). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. As the U.S. Supreme Court has held, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted); *Taylor v. Polhill*, 964 F.3d 975, 981 (11th Cir. 2020).

**B. Argument**

**1. The City Previously Advised Plaintiff That Counts I and II Fail Under *McKinney*, and the Amended Complaint Still Does Not Allege She Pursued Any Florida Remedy.**

Counts I and II replead the original Complaint's procedural due process/property-interest theory against Williams and the City. The original Motion explained why that theory fails, and nothing in the Amended Complaint changes the analysis.

"It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property." *625 Fusion, LLC v. City of Ft. Lauderdale,* 526 F. Supp. 3d 1253, 1266 (S.D. Fla. 2021) (quoting *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (en banc)). "A § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Id.* (quoting *J.R. v. Hansen*, 736 F.3d 959, 965 (11th Cir. 2013)) (cleaned up).

"Assuming a plaintiff has shown a deprivation of some right protected by the due process clause," a court should next consider "whether the available state procedures were adequate to correct the alleged procedural deficiencies." *Id.* (quoting *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000)). "If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." *Id.* "To be adequate . . . the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." *Id.*

In *McKinney,* the Eleventh Circuit observed that "a procedural due process violation is not complete 'unless and until the State fails to provide due process.'" 20 F.3d at 1557 (quoting *Zinermon v. Burch,* 494 U.S. 113, 126 (1990)). Thus, even when a plaintiff suffered a procedural deprivation at the hands of the state, he has not suffered a violation of his procedural due process rights unless and until the state refuses to make available a means to remedy the deprivation. *Id.* at 1563.

Here, Plaintiff failed to allege that the City refused to make available a procedural means to remedy any of the alleged deprivations. This alone mandates dismissal. *See McKinney*, 20 F.3d at 1557, 1563. Further, Plaintiff has not alleged (nor can she allege) that the state-provided remedies (e.g., mandamus proceedings, certiorari review, declaratory relief, or any other Florida state-court remedy) were inadequate.

### 2. Counts III and IV Similarly Fail Under *McKinney* and its Progeny

In Counts III and IV, Plaintiff recasts the termination as a "stigma-plus" deprivation of a liberty interest in reputation. *See* [DE 32] ¶¶ 139, 151. Plaintiff premises this theory on the

information contained in the ALGO investigative report. *See* [DE 32] ¶¶ 144, 152. These claims are new, but they similarly fail for a reason Plaintiff was already told governs this case.

To state a liberty-interest claim, a discharged public employee must satisfy a six-element test: "(1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) [was] made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing." *Cotton*, 216 F.3d at 1330 (quoting *Warren v. Crawford*, 927 F.2d 559, 565 (11th Cir. 1991)); *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). The Eleventh Circuit has held that the *McKinney* adequate-state-process principle applies to liberty-interest name-clearing claims no differently than to property claims. *Cotton*, 216 F.3d at 1331 n.1. Put simply, the court had "used the *McKinney* framework to decide cases alleging liberty-interest procedural due process claims" and saw "no reason for distinguishing between the two kinds of procedural due process claims." *Id.* Because adequate state remedies can supply the name-clearing opportunity, a plaintiff who does not pursue them "fail[s] to state a procedural due process claim." *Id.* at 1330. Applying Georgia law, the court held that a state mandamus action could compel a name-clearing hearing, and it explained that the availability of other adequate state remedies "would preclude a procedural due process claim." *Id.* at 1333 & n.3. The Eleventh Circuit applied the same rule in August 2026: "[a] plaintiff whose procedural due process claim is based on the deprivation of a liberty interest bears the same burden of seeking state remedies as one claiming deprivation of a property interest." *Peden v. Stephens*, 187 F.4th 1371, 1378 (11th Cir. 2026).

Plaintiff alleges she was not given a name-clearing hearing and was not told she could request one. *See* [DE 32] ¶¶ 145–146, 156. She does not allege that she sought one through Florida's courts, or that Florida's remedies are unavailable or inadequate. Accordingly, Counts III and IV fail for the same reason as Counts I and II and are due to be dismissed.

### 3. <u>Counts V and IX Fail to State a Conspiracy Claim against Williams</u>

In Count V of the Amended Complaint, Plaintiff claims that ALGO Defendants and Williams reached an understanding "to shape, publish, and use investigation materials in a manner that deprived Plaintiff of her protected employment and liberty interests." *See* [DE 32] ¶ 168. A § 1983 conspiracy claim requires "a conspiracy … that resulted in the actual denial of some

underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010). Indeed, "[t]he conspiratorial acts must impinge upon the federal right" and "the plaintiff must prove an actionable wrong to support the conspiracy." *Id.* (quoting *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990)). As discussed in greater detail above, because Counts I–IV fail to allege any completed constitutional violation, the conspiracy claim collapses with them.

In Count IX, Plaintiff claims that Williams and ALGO Defendants "agreed, expressly or tacitly, to generate, shape, publish, and use the investigation ..." to "implicate[] Ms. Monestime in misconduct or irregularities." *See* [DE 32] ¶ 250. Section 768.28(9)(a), Florida Statutes, independently bars the Florida civil conspiracy claim against Williams in his individual capacity.

Under Florida law, a government employee "may not be held personally liable for any injury resulting from an act committed in the scope of his or her employment unless the [employee] acted with bad faith or with malicious purpose." *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir. 2004) (citing § 768.28(9)(a), Fla. Stat. (2025)). The statute also withholds immunity where the employee acted "in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28(9)(a), Fla. Stat. (2025). Where the employee acts within the scope of employment, the exclusive remedy is "by action against the governmental entity." *Id.*

The Amended Complaint alleges that Williams acted "in his role as City Manager" "[a]t all times material." *See* [DE 32] ¶ 11. The conduct Plaintiff attributes to Williams in that count is official conduct: his communications with the investigators the City retained and the performance of his duties as City Manager. See [DE 32] ¶¶ 44–60, 253. Because those alleged acts were committed in the scope of his City employment, § 768.28(9)(a) channels any state-law claim to the City and bars the claim against Williams personally. *Prieto*, 361 F.3d at 1320. The Amended Complaint pleads no specific facts establishing that Williams acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, as required to strip the statutory immunity. To the contrary, Plaintiff alleges that Williams offered her an appointment as the City's Housing and Economic Development Director and that he met with her to discuss her transition to that role. See [DE 32] ¶¶ 83, 87, 201. Such allegations are inconsistent with bad faith and with malicious purpose. Williams is also absolutely privileged. Florida law affords executive officials an absolute privilege for statements made within the scope of their offices, and that privilege bars claims for tortious interference as well as claims for defamation. *Goetz v. Noble*, 652 So. 2d 1203, 1205 (Fla. 4th DCA 1995). In *Danford v. City of*

*Rockledge*, 387 So. 2d 967, 968 (Fla. 5th DCA 1980), the Fifth District affirmed the dismissal, without leave to amend, of a complaint against a city manager and two city councilmen alleging defamation, tortious interference with a contract of employment, and conspiracy to defame, holding that "[i]n Florida, executive officials have an absolute privilege for actions taken within the scope of their offices." Here, Williams is the City Manager, and each statement Plaintiff attributes to him was made in the performance of that office: his communications with the investigators the City retained; the statements Plaintiff alleges he made at the meetings he convened as City Manager; his email of February 26, 2026; and the separation decision itself. See [DE 32] ¶¶ 44–60, 84–88, 141. Plaintiff pleads Count IX as derivative of defamation and tortious interference. See [DE 32] ¶ 249. Thus, the absolute privilege bars Count IX as to Williams.

Additionally, both conspiracy counts also rest on a conclusory "meeting of the minds" that *Twombly* and *Iqbal* do not permit. To survive dismissal, a Section 1983 conspiracy[5] plaintiff "must make particularized allegations that a conspiracy exists," and "[v]ague and conclusory allegations suggesting a section 1983 conspiracy are insufficient to withstand a motion to dismiss." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1346 (S.D. Fla. 2012). "The mere allegation of an agreement, by itself, is conclusory." *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1148 (N.D. Ga. 2016). A complaint must instead plead facts indicating an actual agreement and acts taken in furtherance of it. *Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d at 1151.

*Spadaro* does not assist Plaintiff. There, the complaint alleged that two named defendants selected a particular investigator in order to close a specific investigation; that three defendants supplied a fourth with a coached statement before he administered a polygraph examination; and that the four met immediately afterward. *Spadaro*, 855 F. Supp. 2d at 1346–47. On those allegations, the court found a pleaded agreement. Here, the Amended Complaint alleges nothing comparable. Plaintiff alleges that the City Commission voted on January 20, 2026, to engage an independent third-party reviewer and authorized and directed the City Manager to select and retain the reviewer; that Interim City Manager Andrew Plotkin, acting on that authorization and direction, discussed the engagement with Alvarez and advised him of what the City required; and that Plotkin

[5] For a Florida civil conspiracy claim, Plaintiff must similarly plead the existence of "an agreement between two or more parties…". *See Safety Harbor Powersports, LLC v. City of Safety Harbor*, No. 8:23-cv-2399-VMC-UAM, 2024 WL 3400278, at *9 (M.D. Fla. July 12, 2024) (quoting *Corbett v. Transp. Sec. Admin.*, 968 F. Supp. 2d 1171, 1190 (S.D. Fla. 2012)).

executed the engagement agreement on behalf of the City on February 2, 2026. See [DE 32] ¶¶ 37–40, 43. The Amended Complaint does not allege that Williams selected the ALGO Defendants, and the City executed the engagement agreement the day before Williams's appointment as City Manager took effect. Resolution R2026-13 § 2. The Amended Complaint supplies only an inference. It asks the Court to find an "understanding" from "the timing, coordination, report discrepancies, and immediate employment use" of the ALGO report. *See* [DE 32] ¶ 168. For the Florida civil conspiracy count, Plaintiff alleges the agreement may be inferred from coordinated meetings, reports exchanged, report revisions, transmission of materials to Williams, immediate use of the report against her, and republication of the Interim Report to outside authorities such as the Miami-Dade State Attorney's Office and Florida Ethics Commission. *See* [DE 32] ¶ 251. Such allegations describe the ordinary course of a retained investigation. They do not plead the nature, timing, or content of any unlawful agreement to deprive Plaintiff of her rights. *See also Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d at 1151. Because the conspiracy allegations here are conclusory, they are inadequate to state a conspiracy claim under either Counts V or IX and must be dismissed.

### 4. **<u>Counts II and IV Independently Fail Against the City under *Monell*</u>**

Plaintiff's claim against the City pursuant to § 1983 in Counts II and IV should be dismissed because it is an attempt to attach vicarious liability to the City, which is strictly prohibited under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "[T]he Supreme Court has made clear that the bar to establish municipal liability is very high." *Simmons v. Bradshaw*, 879 F.3d 1157, 1169 (11th Cir. 2018). A municipality "cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, 585 U.S. 87, 95 (2018) (quoting *Monell*, 436 U.S. at 691).

To establish *Monell* liability, Plaintiff must demonstrate: (1) that her constitutional rights were violated, (2) that the City had a custom or policy that constituted deliberate indifference to those constitutional rights, and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Plaintiff has three options: (1) identify "an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council)," *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016), (2) identify "an unofficial custom or practice of the [City] shown

through the repeated acts of a final policymaker for the [City]," *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*), or (3) "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority," *Hoefling*, 811 F.3d at 1279 (quoting *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002)). Under any theory, Plaintiff must also "show that the municipal action was taken with the requisite degree of culpability" and "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Plaintiff's primary theory of municipal liability rests on the conclusory allegation that Williams was a "final policymaker" for the City. See [DE 32] ¶¶ 6, 11, 104, 120, 128, 157. That allegation is a legal conclusion, not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Whether an official is a final policymaker for constitutional purposes is a question of state and local law (*City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–24 (1988) (plurality opinion); *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997)), and it is the Court's task, not the pleader's, to "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian*, 520 U.S. at 784–85 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)); *see also Praprotnik*, 485 U.S. at 126. Discretionary authority to implement policy is not policymaking authority: "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.* at 127; *see also Hoefling*, 811 F.3d at 1279. Here, the City's Civil Service Rules are policies not of Williams's making. Plaintiff alleges that the City adopted them under Article VII of the City Charter and last revised them by Resolution R2017-114. See [DE 32] ¶¶ 27–28. Plaintiff further alleges that Rule 14 addresses the order of layoff, the factors to be considered, and the layoff list and recall procedures that follow, and she alleges that Williams did not comply with those provisions. See [DE 32] ¶¶ 32–33, 108–09. Taken as pleaded, those allegations describe a departure from policy the City adopted, and an alleged departure from established municipal policy is not itself municipal policy. *Praprotnik*, 485 U.S. at 127. Plaintiff's final-policymaker theory therefore fails on the face of the Amended Complaint.

Moreover, Plaintiff does not plausibly allege ratification. The Amended Complaint asserts that Williams's termination decision was "ratified by the City, as evidenced by the presence and involvement of HR Personnel during the meeting at which her employment was terminated, and the payments to her identified in the letter provided to her attendant with the termination of her employment." *See* [DE 32] ¶ 128. That theory fails as a matter of law. Ratification under *Monell* requires that a final policymaker knowingly approve both the subordinate's decision and the basis for it. *Praprotnik*, 485 U.S. at 127; *Hoefling*, 811 F.3d at 1279; *Matthews*, 294 F.3d at 1297. Human Resources personnel are not final policymakers for the City, and their attendance at a termination meeting is not the deliberate policymaker approval *Monell* requires. Additionally, attendance of HR staff and the processing of a separation do not constitute a policymaker's knowing approval of an unconstitutional basis. As the Supreme Court held, "[s]imply going along with discretionary decisions made by one's subordinates ... is not a delegation to them of the authority to make policy." *Praprotnik*, 485 U.S. at 130. The ratification theory therefore adds nothing to the Complaint, and Plaintiff failed to allege *Monell* liability under any theory.

Nor does Resolution No. R2026-31 supply the official policy that Plaintiff's theory requires. Plaintiff alleges that the City's "official policy/custom/final decision" included "adopting Resolution R2026-31." [DE 32] ¶ 132; *see also id.* ¶ 131. An official policy may be "enacted by [the City's] legislative body (e.g., an ordinance or resolution passed by a city council)," *Hoefling*, 811 F.3d at 1279, but Plaintiff must still "demonstrate a direct causal link between the municipal action and the deprivation of federal rights," *Bryan Cnty.*, 520 U.S. at 404. Here, the resolution does not name Plaintiff and directs no personnel action. *See Resolution R2026-31. It refers* the Interim Investigative Report to outside authorities and states that the referral "is not a finding of criminal or ethical violation." *Id.* § 1. The Commission adopted it on February 17, 2026, ten (10) days before Plaintiff's separation. *Id.; [DE* 32] ¶ 88. The resolution did not separate Plaintiff, did not determine what process she would receive, and did not foreclose any name-clearing opportunity. The process Plaintiff claims she was denied arises under the Civil Service Rules for Count II and from the absence of a name-clearing hearing for Count IV. [DE 32] ¶¶ 91–95, 145–146. Thus the resolution is not the policy that caused the alleged denial of process, and it cannot support municipal liability.

Finally, a municipality cannot be liable under 42 U.S.C. § 1983 absent an underlying constitutional violation by a municipal actor. *See Monell*, 436 U.S. at 694; *City of Los Angeles v.*

*Heller*, 475 U.S. 796, 799 (1986); *625 Fusion, LLC*, 526 F. Supp. 3d at 1260. Because Plaintiff's procedural due process claims are not complete under *McKinney v. Pate*, no underlying constitutional violation exists for which the City must answer. Counts II and IV must be dismissed on that ground alone.

### 5. Williams Is Entitled to Qualified Immunity on Counts I and III

An official-capacity Section 1983 claim against Williams is, in substance, a claim against the City itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Because Plaintiff has already sued the City directly in Counts II and IV, any official-capacity component of Counts I and III is duplicative and must be dismissed. The individual-capacity component of Counts I and III is addressed in the qualified immunity section below. See *Hafer*, 502 U.S. at 27–31.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Because it is "an immunity from suit rather than a mere defense to liability," *Mitchell*, 472 U.S. at 526, its applicability is a threshold question that courts should decide "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Qualified immunity may therefore be properly considered on a motion to dismiss. *See, e.g.*, *Flores v. Satz*, 137 F.3d 1275, 1278–79 (11th Cir. 1998) (reversing denial of motion to dismiss).

The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity shields from suit "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To be entitled to qualified immunity, the defendant public official must first show that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. *Crocker v. Beatty*, 995 F.3d 1232, 1239–40 (11th Cir. 2021). Once the defendant meets this burden, the burden shifts to plaintiff to establish both (1) that a constitutional right was violated and (2) that the constitutional right was clearly established at the time the official acted. *Id.; Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). Clearly established law "should not be defined 'at a high level of generality,'" but "must be 'particularized' to the facts of the

case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (first quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); and then quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If the plaintiff cannot establish either element, qualified immunity is appropriate. *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).

"To establish that the challenged actions were within the scope of [an officer's] discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). "In other words, '[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)).

Here, Plaintiff alleges that the City Manager holds authority over discipline and layoff decisions under the Civil Service Rules, and she alleges that Williams exercised that authority. See [DE 32] ¶¶ 12–14. On Plaintiff's own allegations, Williams was performing a legitimate job-related function through means within his power to use, which is all the discretionary-authority showing requires. *Estate of Cummings*, 906 F.3d at 940. The burden then shifts to Plaintiff to establish both (1) that a constitutional right was violated and (2) that the right was clearly established at the time the official acted. *Crocker*, 995 F.3d at 1239–40.

Plaintiff has not alleged a violation of a clearly established constitutional right. Although a case "on all fours" is not required, "the clearly established law *must be particularized to the facts* of the case." *White*, 580 U.S. at 79 (emphasis added; internal quotation marks omitted). Plaintiff identifies no case that meets that standard. Thus, qualified immunity bars Counts I and III.

Independently, Plaintiff cannot overcome qualified immunity because the Eleventh Circuit has long held that no procedural due process claim under Section 1983 is complete where the state provides an adequate postdeprivation remedy, even one the plaintiff chose not to invoke. *See McKinney*, 20 F.3d at 1557, 1563; *Cotton*, 216 F.3d at 1330–33; *Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1300 (11th Cir. 2000) (dictum). Under *Horton*, the adequacy inquiry is "not micro in its focus, but macro," and looks to "whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation," not to any single procedural vehicle. 202 F.3d at 1300. Florida state courts provide multiple remedies, including

mandamus, other civil actions in circuit court, and, where the challenged action is quasi-judicial, certiorari review. *See* Art. V, § 5(b), Fla. Const.; Fla. R. App. P. 9.030(c)(3); *City of Deerfield Beach v. Vaillant*, 419 So. 2d 624, 625–26 (Fla. 1982); *cf. Cotton*, 216 F.3d at 1332–33 (holding that Georgia mandamus provided an adequate remedy). The Amended Complaint acknowledges that Rule 14.5 of the City's Civil Service Rules forecloses any Board appeal for layoffs (*See* [DE 32] ¶ 112) and pleads only that "Ms. Monestime had no process to appeal or otherwise challenge the layoff, despite her request(s)" (*See* [DE 32] ¶ 95). Plaintiff does not allege that she pursued any Florida state-court remedy or that Florida law fails to provide one. On those pleadings, no clearly established constitutional right was violated, and no reasonable City Manager would have understood the challenged conduct to violate federal due process where Florida provides the very postdeprivation process federal law recognizes as adequate. This ground is dispositive of both counts as a matter of law and can be resolved on the face of the pleadings without conversion under Rule 12(d). Counts I and III are pleaded against Williams in his individual capacity. See *Hafer*, 502 U.S. at 31 (holding that state officials sued in their individual capacities are "persons" within the meaning of 42 U.S.C. § 1983).

### 6. **<u>Count VI Fails to State a Claim Against the City Under Florida's Whistle-blower's Act</u>**

Count VI alleges that the City retaliated against Plaintiff for statements she made when two (2) investigators employed by a private law firm interviewed her. [DE 32] ¶¶ 15, 18–19, 61–62, 175–185. Florida's Whistle-blower's Act, sections 112.3187–112.31895, Florida Statutes (the "Act"), does not protect those statements.[6] A plaintiff must show that she disclosed "(1) protected information (2) to an individual or entity identified in the statute (3) in a protected manner." *McAlpin v. Town of Sneads*, 61 F.4th 916, 928 (11th Cir. 2023). The Amended Complaint [DE 32] satisfies none of these requirements, and each failure is independently fatal. Liberal construction does not change that result, because it "cannot be used to defeat a fair reading of the statute that is

[6] Plaintiff alleges that her employment ended on February 27, 2026. [DE 32] ¶¶ 88–89. This Motion therefore cites the 2025 Florida Statutes. The 2026 amendments renumbered section 447.203 and conformed the cross-reference in section 112.3187(6) without changing the provisions discussed here. *See* ch. 2026-58, §§ 5, 25, Laws of Fla.

grounded in its text and structure." *Dep't of Child. & Fams. v. Herstein*, 399 So. 3d 384, 392 (Fla. 1st DCA 2025).

**i. Plaintiff Did Not Disclose the Type of Information the Act Protects**

Protected information "must include" a violation of law "which creates and presents a substantial and specific danger to the public's health, safety, or welfare," or an act of "gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty." § 112.3187(5)(a)–(b), Fla. Stat. (2025). This category "is narrow in scope." *McAlpin*, 61 F.4th at 928. Here, Plaintiff told the investigators that a Building Fund reserve surplus was "legally concerning," but she stated that she "did not know of improper expenditures"; described a "questionable lobbying transaction" while admitting that she "did not know how they were secured or whether they were actually lobbyists"; relayed staff concerns about Human Resources and the timing of travel paperwork; and stated that elected officials "sometimes went directly to staff" and that she "wanted a clearer process." [DE 32] ¶ 61(a)–(e). None of these statements identifies a danger to anyone or gross misconduct by anyone. *See Henley v. City of N. Miami*, 329 So. 3d 791, 794–95 (Fla. 3d DCA 2021) (affirming dismissal with prejudice where the alleged disclosures projected budget deficits and recommended cuts); *Nazzal v. Fla. Dep't of Corr.*, 267 So. 3d 1094, 1097 (Fla. 1st DCA 2019) (rejecting the "broad proposition that any letter to a supervisor complaining about personal conflicts with another employee or the allocation of duties and responsibilities within the agency is sufficient to create a triable issue of misfeasance").

The remaining items also fail. Plaintiff's statements about Figgers Communications, the City Manager recruitment, and the American Rescue Plan Act funds explained her own role, and she alleges that she "provided information that corrected mistaken facts." [DE 32] ¶¶ 61(f), 178(c), (h)–(j). *See Shaw v. Town of Lake Clarke Shores*, 174 So. 3d 444, 446 (Fla. 4th DCA 2015) (holding that an employee's admission during an investigation that he wrote a letter "is not a disclosure concerning a violation of law or act of gross mismanagement"). Her reference to "information concerning the allegation" that a video recording be altered does not say what she disclosed. [DE 32] ¶ 178(b). Her labels, *id.* ¶¶ 62, 178, are legal conclusions. *Iqbal*, 556 U.S. at 678; *see Broward Cnty. Sheriff's Off. v. Hamby*, 300 So. 3d 213, 214, 216–17 (Fla. 4th DCA 2020) (holding that "vague and conclusory allegations" about statements made to an investigating official "were insufficient to show a protected disclosure").

### ii. <u>**Plaintiff Did Not Disclose Information to the City's Chief Executive Officer or Another Appropriate Local Official**</u>

For a municipality, "the information must be disclosed to a chief executive officer as defined in s. 447.203(9) or other appropriate local official." § 112.3187(6). That requirement applies independently of the protected categories in subsection (7). *McAlpin*, 61 F.4th at 931. The City's chief executive officer is the City Manager. § 447.203(9), Fla. Stat. (2025); [DE 32] ¶¶ 6, 9, 182. An "other appropriate local official" is "an official or official entity who is affiliated with the violating governmental entity and has the authority to investigate, police, manage, or otherwise remedy the violation or act by the violating governmental entity." *Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 424 (Fla. 4th DCA 2015). Plaintiff made her statements to Franklin Roig and Norberto Hernandez, whom she alleges were employees and agents of a "private law firm." [DE 32] ¶¶ 15, 18–19, 61, 177. Neither is the City Manager, and neither holds any office of the City. *Cf. Rustowicz*, 174 So. 3d at 425 (concluding that a director "was a local official since he was also an employee of the employer").

Plaintiff's allegation that Williams "received the disclosures through ALGO's report," [DE 32] ¶ 182, does not cure the defect. The employee "must have disclosed the information" to a statutory recipient. *McAlpin*, 61 F.4th at 930. A report that someone else prepares is not the employee's disclosure. *See Henley*, 329 So. 3d at 795 n.2 (holding that an outside auditor's report "cannot be considered because the report is not a disclosure made by" the plaintiff); *Castro v. Sch. Bd. of Manatee Cnty.*, 903 F. Supp. 2d 1290, 1303 (M.D. Fla. 2012) (holding that a supervisor's later awareness of an email was "not sufficient to establish that the email was disclosed to her"). Plaintiff alleges that ALGO, not she, drafted, finalized, and transmitted the Interim Report. [DE 32] ¶ 54.

### iii. <u>**Plaintiff Does Not Fall Within a Protected Category Because a Private Law Firm, Not an Agency, Conducted the Investigation**</u>

Plaintiff made no written complaint; she answered questions in an audio-recorded interview. [DE 32] ¶ 177. She therefore relies on the category for employees "requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity." § 112.3187(7); [DE 32] ¶¶ 175–177, 185. A private law firm conducted the

investigation she describes. The Act defines an "agency" as a government entity and its officials and subdivisions, § 112.3187(3)(b), and separately defines an "independent contractor" as "a person, other than an agency, engaged in any business and who enters into a contract . . . with an agency," § 112.3187(3)(e). A partnership is a "person." § 1.01(3), Fla. Stat. (2025). Plaintiff alleges that ALGO is a "limited liability partnership" and a "private law firm" that conducted the investigation under a written retainer agreement with the City. [DE 32] ¶¶ 15, 39–40, 175, 184. On her own allegations, ALGO is an independent contractor, not an agency.

The distinction is deliberate. The Legislature named independent contractors throughout the Act, § 112.3187(2), (4)(a)–(b), (5)(a)–(b), but limited the participation category to an inquiry "conducted by any agency or federal government entity," § 112.3187(7). "When the legislature has used a term . . . in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded." *Leisure Resorts, Inc. v. Frank J. Rooney, Inc.*, 654 So. 2d 911, 914 (Fla. 1995). When the Legislature intends "agency" to include private entities acting for a public agency, it says so. *See* § 119.011(2), Fla. Stat. (2025). The Act also distinguishes an agency from its agents, protecting disclosures of misconduct "committed by an employee or agent of an agency." § 112.3187(5)(a)–(b). Plaintiff's labels describing ALGO as the City's "designated investigative agent" and the investigation as "controlled by City officials," [DE 32] ¶¶ 182–183, therefore do not make ALGO an agency, and they are conclusions in any event. *Iqbal*, 556 U.S. at 678.

Neither *Burden v. City of Opa Locka*, No. 11-22018-CIV, 2012 WL 4764592 (S.D. Fla. Oct. 7, 2012), nor *Rustowicz* extends the participation category to an inquiry conducted by a private firm. In *Burden*, the City Manager initiated the inquiry and directed the Assistant City Manager and the Director of Human Resources to conduct it. *Id.* at *2. The court treated the inquiry as one conducted by an agency because the City Manager who initiated it is an "official" within the Act's definition of an agency, and it held that the two City officials who conducted the interviews were "other appropriate local officials." *Id.* at *14 & n.10; *see* § 112.3187(3)(b). *Rustowicz* agreed with that reasoning and described the statements in *Burden* as made to "two people selected by the city manager to conduct the inquiry." 174 So. 3d at 421–22. Here, by contrast, the interviewers were Roig and Hernandez, whom Plaintiff alleges were employees and agents of a private law firm retained under a written agreement, [DE 32] ¶¶ 15, 18–19, 39–40, 61, 175, 177, 184, and neither holds any office of the City. Neither decision holds that a private firm becomes an agency by

contracting with one. A federal court applying the Act has held that inspections performed by private contractors at state correctional facilities were not inquiries "conducted" by an agency. *See Scott v. Advanced Pharm. Consultants, Inc.*, 570 F. Supp. 3d 1120, 1128 (N.D. Fla. 2021), *vacated in part on other grounds on reconsideration*, No. 5:19cv571-RH-MJF, 2024 WL 4753843 (N.D. Fla. Mar. 5, 2024).

**iv. <u>The Act Does Not Permit the Noneconomic Damages Plaintiff Seeks Against the City</u>**

Count VI seeks damages for "emotional distress, mental anguish, humiliation, and loss of enjoyment of life" and "loss of professional reputation." [DE 32] ¶ 197. The Act enumerates only economic and equitable relief. § 112.3187(9)(a)–(e). Because the Act does not clearly and unequivocally waive sovereign immunity for noneconomic damages, Florida's First, Third, and Fourth District Courts of Appeal have each held that such damages are not recoverable against a governmental entity. *Miami-Dade Cnty. v. Garavan*, 434 So. 3d 492, 496–98 (Fla. 3d DCA 2026), *review denied*, No. SC2026-0975, 2026 WL 3001152 (Fla. Oct. 6, 2026); *Agency for Pers. with Disabilities v. Toal*, 406 So. 3d 978, 981–83 (Fla. 1st DCA 2025), *review denied*, No. SC2025-0627, 2025 WL 2912556 (Fla. Oct. 14, 2025); *City of Boynton Beach v. Pierre*, No. 4D2026-0133, 2026 WL 2727433, at *1–3 (Fla. 4th DCA Sept. 16, 2026) (municipal defendant), *review pending*, No. SC2026-1595 (Fla. filed Oct. 15, 2026). *Iglesias v. City of Hialeah*, 305 So. 3d 20 (Fla. 3d DCA 2019), "does not control because it does not appear that sovereign immunity was ever raised in that case." *Garavan*, 434 So. 3d at 498 n.2. The Court should dismiss Count VI to the extent it seeks noneconomic damages or strike that demand. *See* Fed. R. Civ. P. 12(f).

**v. <u>Alternatively, the Court Should Decline to Exercise Supplemental Jurisdiction over Count VI</u>**

If the Court dismisses the federal claims, it should decline supplemental jurisdiction over Count VI. 28 U.S.C. § 1367(c)(3). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims" when "the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004); *see also Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Whether statements to a private firm's investigators satisfy section 112.3187(6) and (7) is a question of Florida law that Florida's courts are best positioned to decide. *See* 28 U.S.C.

§ 1367(c)(1). If the Court instead decides Count VI on the merits, it should dismiss Count VI with prejudice, because its defects arise from Plaintiff's own account of who interviewed her and what she said.

### 7. **The ALGO Defendants Are Entitled to Statutory Sovereign Immunity Under Section 768.28(9)(a), Florida Statutes, and to a Qualified Privilege, and Counts VII and VIII Must Be Dismissed**

Under Florida law, "An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . . [7]. The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a) (emphasis added). As provided by the statute, "The immunity in section 768.28(9)(a) extends to certain private parties who are involved in contractual relationships with the state, provided that such parties are 'agents' of the state." *M.S. v. Nova Se. Univ., Inc.*, 881 So. 2d 614, 617 (Fla. 4th DCA 2004). *See Stoll v. Noel,* 694 So. 2d 701, 703 (Fla. 1997) (holding that private physicians contracted by the Florida Department of Health and Rehabilitative Services qualified as agents of the state and therefore enjoyed statutory sovereign immunity under section 768.28). *See also G4S Secure Sols. (USA), Inc. v. Morrow,* 210 So. 3d 92, 94 (Fla. 2d DCA 2016) (holding that a private corporation retained by the Pinellas County Sheriff's Office to transport prisoners

---

[7] The City and Williams do not adopt the characterization of the ALGO Defendants as agents of the City, whether for purposes of section 768.28(9)(a), Florida Statutes, or for any other purpose, and they take no position on that characterization in this Motion. The City and Williams also reserve all defenses to any claim that might be asserted against the City based on the ALGO Defendants' reports or statements, including the conditions and limitations of section 768.28, Florida Statutes.

qualified as an agent of the state and therefore enjoyed statutory sovereign immunity under section 768.28).

Furthermore, in Florida, "the law also recognizes that certain types of statements – even if false – fall outside the protection of defamation law" where a qualified privilege exists. *Bush v. Raytheon Co.,* No. 8:07-cv-02087-T-24-MAP, 2009 WL 10669904, at *8 (M.D. Fla. Sept. 8, 2009). Under Florida law, a qualified privilege negates a claim for defamation "where the speaker acts in good faith, with an interest to be upheld, through a statement limited in scope to a specific purpose and published on a proper occasion and manner." *Regions Bank v. Kaplan*, No. 8:12-CV-1837-T-17MAP, 2013 WL 1193831, at *19 (M.D. Fla. Mar. 22, 2013) (citing *Gunder's Auto Center v. State Farm Mut. Auto. Ins. Co.*, 422 F. App'x 819, 821–22 (11th Cir. 2011)). In other words, communications "made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable." *Id.* (citing *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984)). "The law permits these statements so that parties can honestly express opinions under reasonable circumstances to other people who need to hear those opinions." *Bush*, 2009 WL 10669904, at *8.

Furthermore, Florida law affords executive officials an absolute privilege for statements made within the scope of their offices, and that privilege bars claims for tortious interference as well as claims for defamation. *Goetz v. Noble*, 652 So. 2d 1203, 1205 (Fla. 4th DCA 1995) (agreeing with *Danford v. City of Rockledge*, 387 So. 2d 967, 968 (Fla. 5th DCA 1980), and stating that "executive officials had absolute immunity to claims of defamation and tortious interference with a contract arising from statements made in connection with their office"); *Danford*, 387 So. 2d at 968 (affirming dismissal of a complaint against a city manager and two city councilmen alleging defamation, tortious interference with a contract of employment, and conspiracy to defame, on absolute privilege grounds).

Here, the ALGO Defendants are shielded from liability due to the qualified privilege granted by their status as agents of the government during the time at issue. Furthermore, Plaintiff has failed to allege any facts that would defeat this qualified privilege. Plaintiff's Amended Complaint describes the circumstances of the creation and publication of the investigative Reports prepared by the ALGO Defendants as follows: The ALGO Law Firm and its employees were retained by the City of North Miami Beach to conduct an investigation and prepare a report on

their findings. *See* [DE 32] ¶¶ 37–40. Ignacio Alvarez provided the ALGO Defendants' Reports to the office of the City Manager for the City of North Miami Beach. *See* [DE 32] ¶¶ 53 and 59–60. Plaintiff alleges that the City adopted Resolution No. R2026-31 to refer the interim investigative report and related records to the Office of the Miami-Dade State Attorney and to the Florida Commission on Ethics, and that Alvarez transmitted the report to each of those offices. See [DE 32] ¶¶ 96–99.

Plaintiff cannot overcome the ALGO Defendants' qualified privilege. Specifically, the essential elements to obtain the benefit of a qualified privilege are "(1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner." *Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 404 (Fla. 2d DCA 2000). Each of those elements is easily satisfied here. The ALGO Defendants were required to conduct the investigation for which they were retained. The City Commission likewise had a corresponding interest in the findings of the investigation it authorized. Finally, the ALGO Defendants published their findings on a proper occasion and in a proper manner, first to the Office of the City Manager and then to the Office of the Miami-Dade State Attorney and the Florida Commission on Ethics, each of which holds authority to act on such findings. *See* Ex. 3 § 1 (referring the Interim Investigative Report to each office "for independent evaluation and any action deemed appropriate within their respective jurisdictions").

Plaintiff has failed to sufficiently allege that the Reports were not published in good faith and in accordance with the standard practices of an attorney working on behalf of a client. Moreover, the Reports addressed subjects in which the recipients had a genuine interest – the results of the investigation that the ALGO Defendants had been retained to conduct on behalf of the City of North Miami Beach. *See e.g., Kaplan*, 2013 WL 1193831, at *19–20 (finding that an employee of the bank's security department had a duty to act to avoid fraud losses and that his notification to the Secret Service was "within collective interest of [the bank] and the Secret Service in preventing losses from fraudulent banking activity"); *see also Thomas*, 761 So. 2d at 404 (a security director at a member racetrack has a duty to communicate to other members of the Bureau conduct by persons involved in racetracks and racing that is detrimental to the interests of the Bureau members); *Nodar*, 462 So. 2d at 809 (remarks made to a school board at a school board meeting concerning the curriculum and instruction at a public high school by a student's parent

come within the scope of qualified privilege). Clearly, the ALGO Defendants, as agents of the City, are entitled to statutory sovereign immunity under section 768.28(9)(a). Indeed, "[c]onduct is within the scope of one's employment so as to be immune from an action for defamation if it is the type of conduct that the employee is hired to perform, the conduct occurs substantially within the time and space limits authorized or required by the job, and the conduct is activated at least in part by the employee's purpose to serve his or her employer." *Thomas*, 761 So. 2d at 404.

Plaintiff has failed to sufficiently allege that the ALGO Defendants were not acting within the scope of their engagement by the City or acting in bad faith. Plaintiff alleges that the City Commission authorized the engagement and that the City retained the ALGO Defendants to conduct the investigation and to prepare a report of findings. See [DE 32] ¶¶ 37–40. Plaintiff has failed to allege that the ALGO Defendants ever acted to benefit their own interests.

Since a qualified privilege exists, in order to maintain her claims, Plaintiff must allege facts showing that the ALGO Defendants "acted with express malice." *Kaplan*, 2013 WL 1193831, at *19 ("To overcome qualified immunity, the pleading must allege facts showing 'express malice.'"). "Express malice is ill will, hostility and an evil intention to defame and injure." *Kaplan*, 2013 WL 1193831, at *20; *see also Gunder's Auto*, 422 F. App'x at 821 ("[w]here a person speaks upon a privileged occasion, but the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege, then it can be said that there was express malice and the privilege is destroyed"). Under Florida law, "express malice sufficient to overcome the presumption exists where the <u>primary</u> motive for the statement is shown to be an intention to injure the Plaintiff." *Bush*, 2009 WL 10669904, at *9 (emphasis added). "As long as the communication is motivated by a desire to protect the interest giving rise to the privilege, the privilege is not forfeited merely because hostility or ill will also are felt by the speaker." *Gunder's Auto*, 422 F. App'x at 821. "Express malice cannot be inferred from the fact that some statements are untrue." *Kaplan*, 2013 WL 1193831, at *20. Likewise, a "conclusory allegation unsupported by factual allegations that statements were made maliciously is not an allegation of express malice." *Id.*

Here, Plaintiff has failed to sufficiently allege the existence of express malice on the part of the ALGO Defendants in their investigation, the generation of the Reports, and the submittal of those Reports to the appropriate parties. *See Nodar*, 462 So. 2d at 810 ("If the statements were made without express malice . . . then there can be no recovery."). Plaintiff has failed to allege any

instances of the ALGO Defendants acting out of express malice. Indeed, Plaintiff has failed to allege any actions or statements demonstrating ill will or an intent to injure on behalf of the ALGO Defendants in the preparation of the Reports. Since Plaintiff has failed to sufficiently allege any express malice on the part of the ALGO Defendants and has failed to sufficiently allege that the ALGO Defendants' preparation of their Reports was primarily motivated by an intention to injure the Plaintiff, Plaintiff's allegations fail to defeat the ALGO Defendants' qualified privilege and her Tortious Interference and Defamation claims should be dismissed.

**8. Count VII for Tortious Interference should be dismissed because Plaintiff has not sufficiently alleged an intentional and unjustified interference with a business relationship.**

In the state of Florida, the elements of tortious interference are well defined: "Such a claim requires proof of the following elements: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *James Crystal Licenses, LLC v. Infinity Radio Inc.*, 43 So. 3d 68, 76 (Fla. 4th DCA 2010) (quoting *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009)).

Giving the Plaintiff the benefit of every doubt, she has failed to allege the third element of Tortious Interference, an intentional and unjustified interference with a business relationship. The Amended Complaint contains no allegations regarding the acts taken by the ALGO Defendants that could be fairly interpreted as establishing such interference. Instead, Plaintiff points to the existence (but not the substance or the contents) of conversations and interactions between the ALGO Defendants and their client, the City of North Miami Beach, in conducting the investigation. Plaintiff does not allege any act taken by the ALGO Defendants that fall outside of a standard attorney-client relationship. Plaintiff has thus failed to sufficiently allege that the ALGO Defendants took any action with the express intent of unjustifiably interfering in her business relationship with the City.

### 9. Count VIII for Defamation should be dismissed because Plaintiff is a limited public figure and there is no allegation that the ALGO Defendants acted with actual malice.

Plaintiff alleges that she served as Chief of Staff for the Mayor from August 2023 to February 2026, that she served as the City's Interim Assistant City Manager from June 2025 to February 2026. [DE 32] ¶¶ 26, 207. On those allegations, Plaintiff was at minimum a limited public figure for purposes of the governance controversy the investigation addressed. Specifically, limited public figures are those "who have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)).

Courts employ "a two-step process in determining whether a particular claimant is a limited public figure or simply a private plaintiff" – the Court must determine (1) "whether there is a 'public controversy'" and (2) "whether the plaintiff played a sufficiently central role in the instant controversy to be considered a public figure for purposes of that controversy." *Mile Marker*, 811 So. 2d at 845–46. Here, both elements are easily satisfied.

First, the governance dispute concerning the conduct of the City's elected officials and their compliance with the City Charter is a public controversy. That dispute arose from the public acts of public officials, and it existed before the investigation began. "In determining whether a matter is a 'public controversy,' the court should ask whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution." *Mile Marker,* 811 So. 2d at 845. Here, Plaintiff alleges that the matters under review included the use of public funds, City procurement practices, and compliance with the City Charter. See [DE 32] ¶¶ 61–62. A reasonable person would expect the residents of the City to feel the impact of their resolution. *See id.* at 845–46 (finding that a controversy over hydraulic versus electric winches "may not be a topic on the daily evening news," but clearly impacts a segment of the population, namely off-road enthusiasts, and distinguishing the case from an essentially private dispute such as a divorce, *cf. Time, Inc. v. Firestone*, 424 U.S. 448, 453–54 (1976)).

Second, Plaintiff role in the instant controversy is of sufficient importance so as to make the Plaintiff a public figure for purposes of that controversy. *Id.* at 846. The Amended Complaint alleges that Plaintiff was included in the investigation conducted by the ALGO Defendants, and

was interviewed by Franklin Roig and Norberto Hernandez for that purpose. [DE 32] ¶¶ 61–62. Plaintiff's name was also mentioned in at least one other interview conducted by the ALGO Defendants. [DE 32] ¶¶ 67–68. Plaintiff further alleges that she responded to the investigators' questions on each of the subjects identified in the Amended Complaint. [DE 32] ¶¶ 61, 212. Therefore, the Plaintiff is, under any circumstances, a limited public figure in this controversy.

As a public figure, whether a general or limited public figure, Plaintiff "must establish 'actual malice' on behalf of [The ALGO Defendants] in order to maintain a defamation action." *Mile Marker,* 811 So. 2d at 845 ("where public figures are concerned, the state's interest in protecting the defamed subject's reputation is lessened, and as such, public plaintiffs must allege a higher level of *mens rea* on behalf of defendant publishers"). "Under the actual malice test, a public figure plaintiff must establish that the disseminator of the information either knew the alleged defamatory statements were false, or published them with reckless disregard despite awareness of their probable falsity . . . the claimant must prove the existence of actual malice by clear and convincing evidence." *Id.* (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and *Lampkin-Asam v. Miami Daily News, Inc.*, 408 So. 2d 666, 668 (Fla. 3d DCA 1981)). Indeed,

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for the truth or falsity and demonstrates actual malice.

*Readon v. WPLG, LLC,* 317 So. 3d 1229, 1235 (Fla. 3d DCA 2021) (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). "This standard requires 'more than mere negligence.'" *Id.* (quoting *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 43 (Fla. 4th DCA 2010)). A plaintiff must plead facts sufficient to give rise to a reasonable inference of actual malice. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701–02 (11th Cir. 2016). Here, Plaintiff has failed to sufficiently allege actual malice on the part of the ALGO Defendants. Accordingly, Count VIII of the Amended Complaint [DE 32] should be dismissed.

**10. Count VIII for Defamation against Franklin Roig and Norberto Hernandez should be dismissed because Plaintiff fails to allege that either party made any kind of defamatory statement.**

In the state of Florida, a Plaintiff must allege five elements to support a claim for defamation "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts §§ 558B, 580A–580B). The first element, publication, is defined as an oral or written communication to any person who is not the Plaintiff.

However, Plaintiff has failed to specifically allege any allegedly defamatory publications made by either Franklin Roig or Norberto Hernandez. Plaintiff does not identify any specific written or oral publications made by either party, let alone any publications that might be considered defamatory.

For this reason alone, Count VIII against Defendants Franklin Roig and Norberto Hernandez should be dismissed.

**11. Counts V and IX Must Be Dismissed for Failure to Allege an Underlying Wrong, for Failure to Allege a Conspiracy, and, as to the ALGO Defendants, Because They Are Immune and Privileged**

Count IX cannot stand because a claim for civil conspiracy fails where the plaintiff has not established an underlying tort. *Ovadia v. Bloom*, 756 So. 2d 137, 140 (Fla. 3d DCA 2000) ("The conspiracy to defame claim cannot stand where, as here, the defamation action fails. There being no defamation, the gist of the defamation conspiracy, there can be no conspiracy claim."). Likewise, the single publication/single action rule prohibits "multiple actions when they arise from the same publication upon which a failed defamation claim is based." *Callaway Land & Cattle Co. v. Banyon Lakes C Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002). Count V arises under 42 U.S.C. § 1983, and it fails for the separate reason set forth above: the Amended Complaint alleges no completed constitutional violation. *Grider*, 618 F.3d at 1260.

Counts V and IX for conspiracy should also be dismissed because Plaintiff's allegations are insufficient. To begin, the ALGO Defendants assert statutory sovereign immunity under

section 768.28(9)(a), Florida Statutes, and a qualified privilege, as set forth above. Plaintiff has not alleged facts that would defeat either.

Additionally, Plaintiff has failed to sufficiently allege the existence of a conspiracy. Plaintiff's Section 1983 conspiracy claim (Count V) "must make particularized allegations that a conspiracy exists" in order to survive dismissal. "Vague and conclusory allegations suggesting a section 1983 conspiracy are insufficient to withstand a motion to dismiss." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1346–47 (S.D. Fla. 2012) (quoting *Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 309 (11th Cir. 2005), and *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984)). Similarly, Plaintiff's Florida Civil Conspiracy Claim (Count IX) must sufficiently allege "an agreement between two or more parties…" to survive dismissal. *See Safety Harbor Powersports, LLC v. City of Safety Harbor*, No. 8:23-cv-2399-VMC-UAM, 2024 WL 3400278, at *9 (M.D. Fla. July 12, 2024) (quoting *Corbett v. Transp. Sec. Admin.*, 968 F. Supp. 2d 1171, 1190 (S.D. Fla. 2012), which in turn quotes *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009)).

Plaintiff offers nothing other than conclusory allegations to support the existence of a conspiracy or that an agreement existed between the ALGO Defendants and any other party, besides the agreement to conduct the investigation that was the purpose of their retainer. Plaintiff's allegations are merely conclusory without any facts being specifically alleged to support that conclusion, and as a result, neither Count V or Count IX may survive.

Separately, it is well established that in the State of Florida that "neither an agent nor an employee can conspire with his or her corporate principal or employer." *Mancinelli v. Davis*, 217 So. 3d 1034, 1036–37 (Fla. 4th DCA 2017) (quoting *Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So. 2d 963, 966 (Fla. 4th DCA 2002)). The doctrine is not an affirmative defense; it negates the multiplicity of actors necessary to a conspiracy, and the burden of pleading around it rests with Plaintiff. *Id.* at 1037. Additionally, the Eleventh Circuit has held that "as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy." *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003). Courts in this district apply that rule to conspiracy claims brought under 42 U.S.C. § 1983 and to alleged conspiracies between private and state actors. See *O'Boyle v. Sweetapple*, No. 9:14-cv-81250-KAM, 2015 WL 13574304, at *7–8 (S.D. Fla. 2015) (so long as an attorney's actions "were motivated not by personal concerns but by concerns for their clients, attorneys do not form

conspiracies with their clients" (quoting *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 339–40 (6th Cir. 1984))); *Am. Credit Card Tel. Co. v. Nat'l Pay Tel. Corp.*, 504 So. 2d 486, 489 (Fla. 1st DCA 1987) (an attorney for a corporation "could conspire only if he acted solely to injure the plaintiff rather than as an attorney seeking to advance the interest of [the corporate defendant]").

Plaintiff has failed to sufficiently allege that the ALGO Defendants were acting in any capacity other than as attorneys and agents on behalf of the City of North Miami Beach or that their actions were not performed within the scope of their engagement by the City. Nor has Plaintiff even remotely alleged that the ALGO Defendants had any kind of personal interest in the outcome of their investigation or any actions that the City might take upon reviewing the results. Likewise, Plaintiff has not, and cannot establish, that the ALGO Defendants were at any time acting with the sole or primary intent to injure her, rather than acting as attorneys and agents seeking to advance the interests of their client. Counts V and IX of Plaintiff's Amended Complaint should be dismissed. *See also Mancinelli*, 217 So. 3d at 1036–37 (applying the intra-corporate conspiracy doctrine where the alleged co-conspirator was the entity's outside counsel).

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Defendants respectfully request that this Court grant oral argument on the Motion. Defendants believe that oral argument will aid the Court on the following issues: whether a procedural due process claim is complete where the plaintiff has not pursued an available Florida remedy; whether the Amended Complaint [DE 32] alleges an official policy, custom, or final policymaker action sufficient to support municipal liability; whether Williams is entitled to qualified immunity and to the immunity and privileges Florida law affords an executive official; whether Plaintiff's statements to the ALGO investigators are protected disclosures under section 112.3187, Florida Statutes; the scope of the statutory sovereign immunity and qualified privilege available to the ALGO Defendants under section 768.28(9)(a), Florida Statutes; and the pleading standards governing express malice and actual malice under Florida and federal law. Defendants estimate that the total time needed for the hearing would not exceed one hour; thirty (30) minutes for Defendants, and thirty (30) minutes for Plaintiff.

**Dated this 2nd day of November, 2026.**

**Respectfully submitted,**

| | |
|---|---|
| WEISS SEROTA HELFMAN<br>COLE & BIERMAN, P.L.<br>*Attorneys for Defendants City of North Miami Beach and Darvin Williams*<br>2255 Glades Road, Suite 200-E<br>Boca Raton, FL 33431<br>Telephone: (561) 835-2111<br><br>By: */s/ Shana Bridgeman*<br>Shana Bridgeman, Esq.<br>Florida Bar No. 10300<br>sbridgeman@wsh-law.com<br>nwoods@wsh-law.com<br>Brett J Schneider, Esq.<br>Florida Bar No. 12443<br>bschneider@wsh-law.com<br>Erica Hausdorff, Esq.<br>Florida Bar No. 1026008<br>ehausdorff@wsh-law.com<br>bmandel@wsh-law.com | KAPLAN ZEENA LLP<br>*Attorneys for The Algo Defendants*<br>2 South Biscayne Boulevard, Suite 3050<br>Miami, Florida 33131<br>Telephone: (305) 530-0800<br>Facsimile: (305) 530-0801<br><br>By: /s/ *James M. Kaplan*<br>JAMES M. KAPLAN<br>Florida Bar No.: 921040<br>james.kaplan@kaplanzeena.com<br>elizabeth.salom@kaplanzeena.com<br>service@kaplanzeena.com<br>MARK SIMONITIS<br>Florida Bar No.: 1048907<br>Mark.simonitis@kaplanzeena.com<br>Cheryl.mingo@kaplanzeena.com |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2nd day of November 2026, a true and correct copy of the foregoing was served through transmission of Notices of Electronic Filing generated by CM/ECF on all counsel of record.

By: /s/ *Shana Bridgeman*
SHANA BRIDGEMAN